# EXHIBIT   A

Case NO: 8:19-cv-1202

 CT Corporation

**Service of Process Transmittal**
05/17/2019
CT Log Number 535505113

TO:     Mary Ann MacKinnon
        FORD MOTOR COMPANY
        1 American Rd
        Dearborn, MI 48126-2798

RE:     **Process Served in California**

FOR:    Ford Motor Credit Company LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Zachery Quintana, etc., Pltf. vs. David Wilson's Ford Of Orange, et al., Dfts. // To: Ford Motor Credit Company LLC |
| **DOCUMENT(S) SERVED:** | * |
| **COURT/AGENCY:** | *, * Case # 30201901070335CUBTCJC |
| **NATURE OF ACTION:** | * |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/17/2019 at 15:01 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | * * *, * * |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/17/2019, Expected Purge Date: 05/22/2019 |
| | Image SOP |
| | Email Notification,  Mary Ann MacKinnon  mmackin1@ford.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / PK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

5/17/19 2P ←

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAVID WILSON'S FORD OF ORANGE, a California Corporation'
FORD MOTOR CREDIT COMPANY LLC, a Delaware Limited
Liability Company; and DOES 1 through 30, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ZACHERY QUINTANA, an individual

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**05/16/2019** at 08:00:00 AM

Clerk of the Superior Court
By Mark Gutierrez, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* CENTRAL JUSTICE CENTER

700 CIVIC CENTER DRIVE WEST, SANTA ANA, CA 92701

CASE NUMBER:
*(Número del Caso):* 30-2019-01070335-CU-BT-CJC

Judge Layne H. Melzer

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
HOVANES MARGARIAN, 801 NORTH BRAND BLVD STE 210, GLENDALE, CA 91203, (818) 553-1000

| DATE: *(Fecha)* 05/16/2019 | DAVID H. YAMASAKI, Clerk of the Court | Clerk, by *(Secretario)* | M. Ada | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

Mark Gutierrez

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Ford Motor Credit Company LLC, a Delaware Limited Liability Company

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Corporation Code 17061 (Limited Liability Company)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

THE MARGARIAN LAW FIRM
HOVANES MARGARIAN, SBN 246359
801 NORTH BRAND BLVD. SUITE 210
GLENDALE, CA 91203
TELEPHONE NO.: (818) 553-1000   FAX NO.: (818) 553-1005
ATTORNEY FOR *(Name):* ZACHERY QUINTANA, an individual

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS: 700 CIVIC CENTER DRIVE WEST
CITY AND ZIP CODE: SANTA ANA, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**05/16/2019** at 08:00:00 AM

Clerk of the Superior Court
By Mark Gutierrez,Deputy Clerk

CASE NAME:
QUINTANA V. DAVID WILSON'S FORD OF ORANGE, ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | | 30-2019-01070335-CU-BT-CJC |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: Judge Layne H. Melzer |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* FIVE (5)
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: APRIL 9, 2019

HOVANES MARGARIAN, ESQ.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

THE MARGARIAN LAW FIRM
HOVANES MARGARIAN, SBN 246359
SHUSHANIK MARGARIAN, SBN 318617
801 N. Brand Boulevard, Suite 210
Glendale, California 91203
Telephone Number:  (818) 553-1000
Facsimile Number:   (818) 553-1005

Attorneys for Plaintiff,
ZACHERY QUINTANA

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

05/16/2019 at 08:00:00 AM

Clerk of the Superior Court
By Mark Gutierrez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE, CENTRAL DISTRICT

| | |
|---|---|
| ZACHERY QUINTANA, an individual, | Case No.:  30-2019-01070335-CU-BT-CJC |
| | Judge Layne H. Melzer |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR DAMAGES** |
| vs. | |
| DAVID WILSON'S FORD OF ORANGE, a California Corporation; FORD MOTOR CREDIT COMPANY LLC, a Delaware Limited Liability Company; and DOES 1 through 30, inclusive, | |
| Defendants. | |

## NATURE OF THE ACTION

NOW COMES the Plaintiff ZACHERY QUINTANA, an individual, by and through Plaintiffs' attorneys The Margarian Law Firm with Plaintiff's Complaint for Damages against Defendants, DAVID WILSON'S FORD OF ORANGE, a California Corporation; FORD MOTOR CREDIT COMPANY LLC, a Delaware Limited Liability Company; and DOES 1 through 30, inclusive.

Plaintiff is informed and believes, and based thereon alleges, that Defendants are co-

conspirators in a fraud scheme designed to defraud consumers who lease vehicles. On April 18, 2014 Plaintiff was such consumers who leased a vehicle from DAVID WILSON'S FORD OF ORANGE which was financed through FORD MOTOR CREDIT COMPANY LLC and became victims of deceptive and fraudulent conduct by the Defendants which has now resulted in significant monetary loss to Plaintiff.

## PARTIES

1.    Plaintiff, ZACHERY QUINTANA ("Plaintiff", "Quintana"), is and was at all times relevant herein an individual residing in Orange County, State of California and leased a vehicle from Defendants in the city of Orange, State of California.

2.    Defendant, DAVID WILSON'S FORD OF ORANGE, a California Corporation ("Defendant", "Ford of Orange"), doing business as FORD OF ORANGE, was at all times relevant herein a California corporation, located at 1350 West Katella, Orange, California and doing business at the same location.

3.    Defendant, FORD MOTOR CREDIT COMPANY LLC, a Delaware Limited Liability Company ("Defendant", "Ford Credit"), doing business at all relevant times in all counties of the State of California.

4.    The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 30, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believe and based thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to, and legally caused injury and damages proximately thereby to Plaintiff as herein alleged.

5.    Plaintiff is informed and believes and based thereon alleges that each fictitious Defendant designated herein as a DOE was responsible, negligently or in some other actionable manner for the events and happenings referred to herein which proximately caused injury and damages to Plaintiff as hereinafter alleged.

6.    Plaintiff is informed and believes and based thereon alleges that at all times

PLAINTIFF'S COMPLAINT FOR DAMAGES

relevant herein, Defendants, and each of them, were the agents, servants, employees, partners, and/or joint venturers of their Co-Defendants and were, as such, acting within the course, scope and authority of said agency, employment, partnership, and/or venture. On information and belief, Plaintiff alleges that the act of any Defendant, including those fictitiously named, is imputable to each and every other Defendant because one or more of the following relationships existed among the Defendants: principal-agent, employer-employee, partner, parent company, sub-company or such other relationship which would make any liability vicarious and imputable to such other Defendant or Defendants in such relationship. Plaintiff further alleges that each act alleged herein, whether by named Defendant or fictitiously named Defendant, was expressly authorized or ratified, as these terms are used in *California Civil Code § 3294 (b)* by each and every other Defendant herein, whether named or fictitiously named.

7.     To the extent that any Defendant was an independent contractor, Plaintiff alleges that the other Defendants exercised such dominion and control over the manner, method and means of the work contracted for that the negligence of any independent contractor should in law, be attributed to the principal who hired such contractor.

8.     Plaintiff is informed and believes and based thereon alleges that, at all times herein relevant, the agents, servants, employees, partners and/or joint venturers of Defendants were acting within the course and scope of said employment and with the consent of, and under the close direction and control of the officers, directors, partners or managing agents of Defendants, and that said officers, directors, partners or managing agents personally authorized, approved of, adopted and/or ratified the acts alleged herein.

9.     Plaintiff is informed and believes and based thereon alleges that, at all times herein relevant, the officers, directors, partners or managing agents of Defendants, whose names are currently unknown to Plaintiff, personally participated in the acts alleged herein.

10.     Plaintiff is informed and believes and based thereon alleges that, at all times herein relevant, the officers, directors, partners or managing agents of Defendants personally acted with oppression, fraud or malice in their dealings with Plaintiff regarding

the subject alleged in this Complaint.

11.    Plaintiff is informed and believes and based thereon alleges that, at all times herein relevant, the officers, directors, partners or managing agents of Defendants personally had close supervision of their agents, servants, employees, partners and/or joint venturers and were familiar with the facts regarding the occurrence with Plaintiff alleged herein.

12.    Plaintiff is informed and believes and based thereon alleges that after learning of the acts of the agents, servants, employees, partners, and/or joint venturers of Defendants, the officers, directors, partners or managing agents of Defendants personally failed and refused to repudiate said actions, and failed to redress the harm done to Plaintiff and failed and refused to punish or discharge the said agents, servants, employees, partners, and/or joint venturers of Defendant.

## STATEMENT OF RELEVANT FACTS

13.  Plaintiff is informed and believes and based thereon alleges that some time prior to April 18, 2014, Defendants conspired to develop lease terms and conditions which would subsequently be offered to consumers interested in leasing vehicles. These terms and conditions were primarily developed by Defendant Ford Finance. Defendant Ford Finance subsequently trained personnel at Ford of Orange, primarily finance managers, to understand the intricacies of these lease terms and conditions.

14.  Plaintiff has good reason to assert and on good belief alleges, that through their ordinary and routine course of business, Defendants purposefully designed the lease terms and conditions to be deceptive and confusing for ordinary consumers. Furthermore, Defendants hid the deceptive terms in the fine-print of the lease contract, front-loading the contract with terms which induced consumers to accept the lease terms as fair and reasonable.

15.  In particular, Defendants structured their lease terms in the front portion of the lease contract according to generally known and acceptable terms – an initial down

-4-

payment plus a monthly lease payment for set number of months. However, in the fine-print Defendants indicated in a confusing and convoluted manner that if a leased is terminated early the consumer would be responsible not for the remaining lease payments but for the value difference between the vehicle's then current auction value and the loan balance ("early lease termination penalty"). Since most vehicles end up valued less than their lease loan balance the odds of this sum being significantly higher than the remaining sum of lease payments was almost guaranteed.

16. Nevertheless, the leases were to be marketed without proper reference to the above referenced deceptive and convoluted terms. Instead, the leases were to be marketed as simple term contracts consisting of a down payment sum plus a monthly payment obligation. The leases were also subject to wear and tear terms and a small final disposition fee, which was standard in all consumer vehicle leases.

17. The above described terms were designed to deceive consumers, induce leases of vehicles and to ambush consumers after the fact if they happened to turn-in their leased vehicle prior to end of their lease contract.

18. Defendants applied the early lease termination penalty not only when a consumer breached by failing to make lease payments but also when a consumer voluntarily returned a vehicle a few months early and paid the remaining lease payments.

19. Defendants co-conspired to lease vehicles under these terms with full knowledge that no consumer would be aware of the true intent of these terms and no dealership personnel would explain these terms as such.

20. Furthermore, Defendants knew that it was routine and common for consumers to return leased vehicles prior to the expiration of their lease terms in light of being offered favorable lease terms on a new vehicle or under other circumstances. Defendants implemented a policy and procedure of taking back leased vehicles prior to the expiration of the lease term without notification or any explanation to the consumer regarding the horrific financial ramifications of doing so.

21. Defendants knew very well that consumers did now know or understand the early

lease termination penalty terms because Defendants purposefully hid it from consumers both at the time of entering leases and at the time of taking back vehicles before the lease term had expired.

22.   Furthermore, Defendants knew of the consumer's lack of understanding of these terms because Defendants launched these terms years ago and by the time of Plaintiff entering the subject lease agreement Defendants already had multiple consumer complaints about these terms.

23.   Defendants' scheme was maliciously designed to induce leases, silently await in hopes of a consumer returning a leased vehicle before the end of the lease term, and then surprise the consumer with an astronomical lease end bill and assert that it was part of the lease terms.

24.   Defendants further included language attempting to waive class action litigation rights by the consumer, so as to attempt to deter consumers from litigating the early lease termination penalty.

25.   On or about April 18, 2014, Plaintiff visited Ford of Orange with the intent to lease a vehicle for personal use.

26.   Concerned with the fact that my client did not have a large budget, my client inquired to find a low-cost lease alternative.

27.   The sales personnel at Ford of Orange assured my client that a Ford Edge was the ideal vehicle for such needs given its very affordable lease terms and large rebate incentives.

28.   Ultimately Plaintiff selected a VEHICLE baring VIN 2FMDK3GCXEBA33974 ("Subject Vehicle", "Plaintiffs' Vehicle").

29.   Plaintiff negotiated a lease agreement for the following set terms which were displayed front and center on their lease contract:

    a.  Rebates:                 $1,750.00

    b.  Cash down payment:    $4,000.00

    c.  Monthly payments:     $320.60

|   | d. | Term of lease: | 24 months |
|---|----|----------------|-----------|
|   | e. | Lease end fee: | $0 |
|   | f. | Total cost of lease: | $13,123.80 |

30. On or about February 11, 2015, Plaintiff called Ford Credit and requested an extension of time to make his monthly lease payment. Instead of extending the due date, Ford Credit appears to have extended his lease term by one month, arguably making the new effective lease end date May 9, 2019.

31. In April of 2016, at the expiration of the original twenty-four (24) month lease term, Plaintiff diligently coordinated the return of the subject vehicle under the presumption that the lease term was up. Representatives of Ford Credit and Ford of Orange took the subject vehicle when Plaintiff contacted them and stated that his lease was about to end and he was supposed to surrender the subject vehicle.

32. At no time during the surrender of the subject vehicle did anyone inform Plaintiff that there was one more month remaining on the lease term.

33. At no time during the surrender of the subject vehicle did anyone inform Plaintiff that his lease return would be subject to an early lease termination penalty.

34. At all times during the surrender of the subject vehicle all personnel involved in the process were informed by Plaintiff of the fact that he was surrendering the vehicle based on his understanding that the lease term was about to end and he was obligated to return it at that time.

35. Based on the representations at the time of the lease and the subsequent confirmation upon inquiry to arrange the surrender and at the time of surrender, my client proceeded to return the subject vehicle to Ford Credit by and through its agents.

36. Shortly after turning in the subject vehicle my client was shocked to receive an astronomical bill in the amount of $4,500.38. Upon follow up, my client was advised that this bill was pursuant to the fine-print terms within the lease contract which stated that in the event of turning in the vehicle prior to completion of the lease term there would be an early lease termination penalty. Furthermore, that he had extended his lease by one (1)

month when he had asked for an extension to make the payment in February of 2015 and thus he was one (1) month early when he surrendered his vehicle in April of 2016.

37.   In plane terms if my client had held on to the subject vehicle and driven it an additional month, he would have only been obligated to pay a single monthly payment. However, since my client returned the subject vehicle about one (1) month early than the contended lease term end (with a lower mileage on the odometer and less wear and tear) my client was responsible for the value difference between the loan balance and the auction value for the subject vehicle. Thus, my client was to be penalized for returning the vehicle sooner while it had a greater value than it would have at the end of the lease.

38.   This was in direct contradiction to the terms described by the Ford of Orange personnel at time of entering the lease agreement and those described by Ford Credit personnel immediately prior to my client turning in the vehicle.

39.   In retrospect it is clear that my client is a victim of a fraud scheme designed and implemented by Ford of Orange and Ford Credit to defraud unsuspecting consumers just like my clients.

40.   Defendants engaged in a pattern and practice of fraud whereby they induced the lease of the subject vehicle, included a confusing and hidden early lease termination penalty, and then interpreted the penalty clause to maximum benefit themselves.

41.   The early lease termination penalty is unenforceable and unconscionable as it is vague and ambiguous. Furthermore, it is designed to mislead and defraud.

42.   Plaintiff has repeatedly requested that Defendants waive or reduce the penalty fees. To date Defendants have refused to do so.

43.   Plaintiff has suffered a great deal of emotional and financial harm as a result of Defendants' conduct and will continue to suffer due to Defendants' conduct. To date Defendants insist that Plaintiff is responsible for the $4,500.38 sum.

## FIRST CAUSE OF ACTION
## FRAUD AND DECEIT

-8-

**(Against All Defendants, Including Does 1 to 30)**

44.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

45.   Defendants intentionally made the previously alleged misrepresentations and promises by deceivingly assuring Plaintiff that his obligations under the lease agreement were limited to the down payment and monthly payments.

46.   Defendants made these misrepresentations via national advertisement campaigns, verbally prior to signing of the lease contract, in writing front and center on the lease contract and once again verbally at the end of the original lease term when Plaintiff inquired about returning the subject vehicle.

47.   Instead of honoring those terms, once Plaintiff gave up possession of the subject vehicle Defendants engaged in the fraudulent scheme as outlined above to defraud Plaintiff by interpreting the early termination penalty clause to their advantage.

48.   In making such misrepresentations and committing such wrongful acts, Defendants acted with the conscious and reckless disregard to the truth or falsity of such misrepresentations and promises and wrongful acts.

49.   In making such misrepresentations and committing such wrongful acts, Defendants acted with the intent to induce Plaintiff's reliance on Defendants to enter the lease agreement and to return the subject vehicle prior to expiration of the lease term. This was so as to trigger the early least termination penalty clause unbeknown to Plaintiff.

50.   Plaintiff actually relied upon such misrepresentations, material omissions and wrongful acts of Defendants.

51.   Plaintiff's actual reliance upon such misrepresentations, material omissions and wrongful acts was justified and reasonable under the circumstances.

52.   The acts and omissions of Defendants as complained of herein, were extreme and outrageous and Defendants are guilty of malice, oppression and fraud in that their conduct was despicable, subjected Plaintiff to cruel and unjust hardship and was carried on with a willful and conscious disregard for Plaintiff's rights or health for the sole purpose

-9-

and intent of causing Plaintiff damages and losses. Plaintiff is therefore entitled to recover an award of punitive damages for the sake of example and by way of punishing Defendants.

53.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered damages for which relief is sought herein.

54.     Moreover, Defendants knew that Plaintiff was not aware of the intended interpretation of the early lease termination penalty clause.

55.     Defendants had multiple complaints from former clients who had leased vehicles, turned them in early, had been charged similarly and had expresses complete lack of knowledge or understanding of the early lease termination penalty.

56.     Defendants purposefully designed the early least termination penalty clause to be deceptive and hidden.

57.     Plaintiff had no bargaining rights or powers at the time of entering the lease contact as it pertained to the early lease termination penalty clause. This was a contract of adhesion.

58.     Furthermore, the early lease termination penalty provision was unconscionable as it gave Defendants a tremendous upside without giving any consideration to Plaintiff. Defendants were in fact to benefit from the fact that Plaintiff was turning in his vehicle early. Instead of rewarding Plaintiff, Defendants penalized Plaintiff. In effect Defendants received a vehicle with less mileage on the odometer, less use, less wear and tear, and a much higher retail value, but for this very same fact insisted that Plaintiff paid Defendants a penalty fee. This was unconscionable and unenforceable. These terms, combined with the deceptive tactics and omissions used to implement them, amount to fraud in concealment.

**SECOND CAUSE OF ACTION**

**NEGLIGENCE**

**(Against All Defendants, Including Does 1 to 30)**

59.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

60.   Defendants are and were at all times relevant herein in the business of offering new vehicles to consumers for lease and offering lease financing terms to consumers pursuant to the laws of the State of California.

61.   Defendants owed Plaintiff a duty to use reasonable care in the all of their services.

62.   Defendants breached and violated this duty by, among other things, failing to disclose to Plaintiff that the lease terms were not such as described, and that Defendants intended to extort thousands of dollars from Plaintiff if Plaintiff ever decided to turn in the subject vehicle early (even if Plaintiff paid the remaining lease payments). All of these were material facts which were known to Defendants but never disclosed to Plaintiff.

63.   It is a violation of *California Vehicle Code § 11713(a)*, "to make or disseminate, or cause to be made or disseminated, before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading; or to so make or disseminate, or cause to be so disseminated, any statement as part of a plan or scheme with the intent not to sell any vehicle or service so advertised at the price stated therein, or as so advertised."

64.   Defendants wrongfully concealed from Plaintiff any and all evidence and knowledge of their operations scheme which was geared to defraud Plaintiff, and falsely represented, through both misrepresentations and concealments of material facts, to Plaintiff that the services offered by Defendants would be performed at the highest industry standards.

65.   *California Vehicle Code § 11713(a)* was designed to prohibit and to prevent the very conduct committed by Defendants. Plaintiff fall within the class of persons protected by these statutes, as they were designed to give prospective consumers assurances as to the truth of matters as stated in advertisements and representations. This statute proscribes

-11-

PLAINTIFF'S COMPLAINT FOR DAMAGES

1  and protects against the very conduct in which Defendants have engaged in, namely false
2  representations, mischaracterizations, concealments, and suppressions of vital facts
3  regarding the terms and conditions of lease financing services.

4       66.     As a direct and proximate result of the acts and omissions of Defendants,
5  Plaintiffs have suffered damages for which relief is sought herein.

6       67.     Plaintiff has good reason to believe and, on such grounds alleges, that
7  Defendants routinely engage in the aforementioned fraudulent, oppressive, malicious and
8  despicable conduct, which harms the general public by engaging in the unlawful conduct
9  alleged herein, namely inducing leases of vehicles under vague and ambiguous terms and
10 subsequently charging outrageously large sums, in excess of lease payment sums, when a
11 consumer returns a vehicle sooner than the end of the lease term.

12 **THIRD CAUSE OF ACTION**

13 **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.**

14 **(Against All Defendants, Including Does 1 to 30)**

15      68.     Plaintiff re-alleges and incorporates by reference as fully set forth herein all
16 paragraphs of Plaintiff's Complaint for Damages.

17      69.     Plaintiff has standing to bring this claim because Plaintiff has lost money or
18 property as a result of the alleged misconduct.

19      70.     Defendants' previously alleged intentional misrepresentations, promised,
20 fraudulent scheme to defraud and charge Plaintiff outrageous early lease termination
21 penalties, resulting in damage to Plaintiff with the conscious and reckless disregard to the
22 truth or falsity of such misrepresentations and promises and wrongful acts constitute
23 violations of the *Business & Professions Code § 17200, et seq.*

24      71.     The acts of Defendants as herein described, present a continuing threat to
25 members of the general public in that Defendants continue to engage in these deceptive
26 practices and will not cease doing so unless and until an injunction is issued by this Court.

27      72.     As a direct result of the aforementioned acts, Defendants have unlawfully,
28 unfairly and unjustly collected and continue to hold revenues and profits derived directly

-12-

or indirectly from Plaintiff, who has been victimized by the practices challenged herein. Defendants have failed to disgorge and/or waive any of these revenues that do not properly belong to them.

73.     In accordance with the provisions of *Business & Professions Code §§ 17200 and 17203*, Plaintiff is entitled to an order enjoining the unlawful, unfair, deceptive and/or fraudulent acts as described herein, and directing Defendants to make full restitution to Plaintiff, who has suffered from such acts.

74.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages for which relief is sought herein.

## FORTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, ET SEQ.

### (Against All Defendants, Including Does 1 to 30)

75.     Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

76.     Plaintiff has standing to bring this claim because Plaintiff has lost money or property as a result of the misconduct alleged.

77.     As the time of leasing the subject vehicle, Defendants reassured Plaintiff that their sole liability was limited to the down payment and the monthly payments.

78.     Thereafter, Defendants played out their conspiracy scheme, advising Plaintiff that there were no negative repercussions to surrendering the subject vehicle prior to the expiration of the lease term, and then billing an excessively large early lease termination penalty and refusing to waive it. This was all part of a methodical extortion scheme designed and implemented by Defendants against Plaintiff and other similarly situated consumers.

79.     Defendants intentionally made the previously alleged misrepresentations and promises, devised and executed a scheme to defraud Plaintiff, and did so resulting in damage to Plaintiff with the conscious and reckless disregard to the truth or falsity of such

their misrepresentations and promises and wrongful acts.

80.     In acting so, Defendants committed acts of untrue and misleading advertising as defined in *Business and Professions Code § 17500*, by advertising their services contrary to their true nature.

81.     Defendants' acts of untrue and misleading representations and advertising of lease services described above present a continuing threat to members of the general public in that Defendants persist and continue to engage in these practices with respect to the general public and will not cease doing so unless and until an injunction is issued by this Court.

82.     As a direct result of the aforementioned acts, Defendants have received, and continue to unjustly hold, collect or accept revenues derived directly or indirectly from Plaintiffs, through untrue and misleading representations and advertising.

83.     In accordance with the provisions of *Business and Professions Code §§ 17500 and 17535*, Plaintiff is entitled to an order enjoining the acts of untrue and misleading advertising and representations described herein and directing Defendants to make full restitution to Plaintiff, who has suffered from such acts.

84.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages for which relief is sought herein.

# FIFTH CAUSE OF ACTION
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### 18 U.S.C. § 1962(c)-(d)
### (Against All Defendants, Including Does 1 to 30)

37.     Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

38.     Defendants conduct their business -- legitimate and illegitimate, in part -- through various affiliates and subsidiaries, each of which is a separate legal entity. At all

relevant times, the Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

39.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," (hereafter, "RICO"). 18 U.S.C. §1962(c).

40.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. §1962(d).

41.    The Defendants herein aggressively sought to market, target, mislead and defraud consumers who leased vehicles, including the Plaintiff, in an effort to bolster their revenues, augment profits, and increase their market share of the vehicle leasing business market. In pursuit of such increase, the Defendants resorted to deception and/or deceit through their fraudulent scheme and conspiracy. In particular, the Defendants, along with other entities and individuals, were employed by or associated with, and conducted or participated in the affairs of, one or several enterprises (defined below and referred to collectively as the "Leasing RICO Enterprise"), whose purpose was to deceive the consumers into believing that the services offered by Defendants were (1) fair and honest, (2) the consumer's liabilities under the leases would be limited to the down payment, monthly payment, and lease end fee as long as consumers made all payments in a timely manner, (3) all questions regarding the lease terms would be answered honestly and expediently both before entry into a lease agreement and during, and (4) consumer's objective of limiting lease costs to the total indicated on the lease contract would be achieved efficiently. The deception aimed to increase revenues at the cost of unsuspecting consumers who were highly susceptible due to inequalities in bargaining powers and the latent, vague and ambiguous nature of the early lease termination penalty clause. As a direct result of their fraudulent scheme and common course of conduct, Defendants were able to extract revenues of many hundreds of thousands of dollars from

-15-

1   Plaintiff and others similarly situated. As explained in detail below, the Defendants'

2   misconduct violated Sections 1962(c) and (d).

3       **A.**   **Description of the Lease RICO Enterprise**

4       42.   In an effort to control every aspect of their scheme, Defendants exploited

5   various business names/types to cover all steps from entry of a lease agreement for a

6   vehicle, to enforcing monthly lease payments through third party entities, to taking

7   possession of vehicles, to enforcing the vague and ambiguous early lease termination

8   penalty, to wholesaling the vehicles so as to minimize the recovery from such sale and

9   maximize the liability imposed on the consumer. At all relevant times, all Defendants

10  conspired and plotted to execute their common scheme to defraud Plaintiff, other

11  similarly situated consumers and through which they conducted a pattern of racketeering

12  activity under 18 U.S.C. §1961(4).

13      43.   Alternatively, Defendants constitute a single legal entity "enterprise" within

14  the meaning of 18 U.S.C. §1961(4), through which the Defendants conducted their

15  pattern of racketeering activity in the U.S. Specifically, Defendant Orange Coast is the

16  entity through which Defendants channeled the vehicles to be leased to consumers, under

17  the false pretense of simple least terms. Third party entities are used to service the lease,

18  and either through Defendant CCAP or such third party entities, Defendants induce

19  consumers to believe that surrendering their vehicles prior to the end of their lease term

20  would have no repercussions. Then Defendant CCAP auctions off the vehicle and

21  enforces a balance against the consumer for the difference between the auction price and

22  the lease loan payoff, plus miscellaneous fees/costs. Defendants' separate legal entities

23  facilitated the fraudulent scheme and provided a hoped-for shield from liability for the

24  Defendants and their co-conspirators. The enterprises, alleged in this and the previous

25  paragraph, are referred to collectively as the "Lease RICO Enterprise."

26      44.   At all relevant times, the Lease RICO Enterprise constituted a single

27  "enterprise" or multiple enterprises within the meaning of 18 U.S.C. §1961(4), as legal

28

entities, as well as individuals and entities associated-in-fact for the common purpose of engaging in Defendants' profit-making scheme.

45.     On information and belief, the association-in-fact Lease RICO Enterprise consisted of the following entities and individuals: Defendant Orange Coast, Defendant CCAP, DOES 1 through 30 to be identified, including, but not limited to, key management personnel employed by both named entity defendants and third party lease servicing entities, and lease end vehicle disposition service providers.

46.     The two named Defendants are distinct legal entities, but they are controlled (directly and indirectly) by the same individuals.

47.     Based on information and belief, Defendants determined that the volume of business secured by them through legal avenues would not suffice for their appetite. As such, Defendants concocted an elaborate scheme to artificially generate a chain of income by way of the early lease termination penalty. Not satisfied by the industry accepted income limits on lease contracts, Defendants pushed the envelope by committing fraud, making material misrepresentations, hiding/omitting terms, including vague and ambiguous terms, interpreting those terms to their advantage and extorting funds from Plaintiff and others similarly situated at the risk of ruining their credit histories. Emboldened by the success of their criminal enterprise, Defendants proceeded with becoming more aggressive in regard to enforcing the early lease termination penalty despite the mounting number of complaints by consumers. Defendants believed themselves to be invincible. And they were and have been invincible, to date. Successfully doubling or tripling their income per lease customer – a customer whom they fraudulently induced to become a customer – easily gave Defendants a false sense of empowerment and entitlement.

48.     As part of their effort to increase revenues, the Defendants controlled and directed a multi yearlong enterprise with the common purpose of deceiving the public to increase their customer shares and profits.

**B.** **The Lease RICO Enterprise Sought to Increase Defendants' Profits and Revenues**

49.     The lease CICO Enterprise began several years ago. The Lease RICO Enterprise has continued without interruption until the present time.

50.     At all relevant times, the Lease RICO Enterprise: (a) had an existence separate and distinct from each Defendant; (b) was separate and distinct from the pattern of racketeering in which the Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the entity Defendants and their individual owners and managers, their network of dealerships, sales personnel and finance managers, and their lease customer service representatives and other entities and individuals associated for the common purpose of leasing vehicles, inducing a misled understanding of the lease terms, inducing early terminations of leases, and enforcing an early lease termination penalty. Such efforts were geared towards defrauding Plaintiff and others similarly situated through deceptive and misleading tactics and materials and deriving profits and revenues from those activities. Each member of the Lease RICO Enterprise shared in the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased revenue generated by the scheme to defraud Plaintiffs and others similarly situated.

51.     The Lease RICO Enterprise functioned by fraudulently inducing consumers, who were looking for a favorable low-cost lease, mostly for the flexibility and low cost of existing the lease when so desired, to enter leases with a hidden, vague and ambiguous early lease termination penalty clause. The Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to induce leases including the early lease termination penalty clause, to cause consumers to surrender their vehicles prior to the expiration of their lease term and to enforce a penalty for the early termination of the lease.

52.     In Plaintiff's particular case, Defendants induces Plaintiff into leasing the subject vehicle under the false assurance that the total cost of the lease would be $13,123.80 less rebates of $4,000. Thus, the effective cost of the lease was to be a mere $9,123.80.

53.     After Plaintiff had paid a down payment of $4,000 plus about twenty-three (23) payments of $320.80, totaling $7,694.40, the remaining lease obligation was to be zero dollars ($0) or arguably $320.80 if the lease term had indeed been extended by one (1) month.

54.     Instead, Plaintiff was billed $4,500.38.

55.     Therefore, the total cost of the lease was to end up being $12,194.78. This sum is approximately fifty eight percent (58%) higher than the amount agreed upon pursuant to the lease contract. In addition, Defendants took possession of the subject vehicle arguably one (1) month sooner and thus benefited from it having a higher value.

56.     To say that the amount charged was outrageous would be an understatement. Defendants' conduct amounts to extortion.

57.     The Lease RICO Enterprise engaged in, and its activities affected interstate commerce, because it involved commercial activities across state boundaries, such as the use of State and Interstate highways, marketing, promotion, and advertisement of their services throughout the country, delivery/supply of vehicles, the receipt of monies from consumers from across the country, enforcement and sale of vehicles post lease surrender, and enforcement of the early lease termination penalty by way of use of the US Postal Services and the highways of various States.

58.     Within the Lease RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Lease RICO Enterprise used this common communication network for the purpose of marketing to consumers, inducing leases of vehicles, executing lease contracts with the unconscionable early lease termination penalty, inducing the surrender of leased vehicles prior to expiration of their lease term, and lastly but most importantly enforcing the early lease termination penalty.

59.    Each participant in the Lease RICO Enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing coordination of activities. Through the Lease RICO Enterprise, the Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share and minimizing losses.

60.    The Defendants participated in the operation and management of the Lease RICO Enterprise by directing its affairs, as described herein. While the Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

61.    The Defendants exerted substantial control over the Lease RICO Enterprise, and participated in the affairs of the Lease RICO Enterprise by:

      a.    Coordinating the marketing of lease terms/specials;

      b.    Coordinating in the credit inquiry and credit approval of consumers interested in leasing a vehicle;

      c.    Negotiating lease terms with consumers based on pre-determined lease terms offered by Defendants;

      d.    Entering a lease agreement with consumers without notice of the early lease termination penalty;

      e.    Encouraging surrender of vehicles prior to the expiration of the lease term without notice of the early lease termination penalty;

      f.    Taking possession of the leased vehicle and auctioning it off;

      g.    Enforcing a large sum balance collection effort against consumers based on the early lease termination penalty.

62.    Without the Defendants' willing participation, the Lease RICO Enterprise's scheme and common course of conduct would not have been successful.

63.    The Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiff

1  cannot fully know at present, because such information lies in the Defendants' and others'
2  hands.

3  **C.    Mail and Wire Fraud**

4  64.    To carry out, or attempt to carry out the scheme to defraud, the Defendants,
5  each of whom is a person associated-in-fact with the Lease RICO Enterprise, did
6  knowingly conduct or participate, directly or indirectly, in the conduct of the affairs of the
7  Lease RICO Enterprise through a pattern of racketeering activity within the meaning of 18
8  U.S.C. §§1961(1), 1961(5) and 1962(c), and which employed the use of the mail and wire
9  facilities, in violation of 18 U.S.C. §1341 (mail fraud) and §1343 (wire fraud).

10  65.    Specifically, the Defendants have committed, conspired to commit, and/or
11  aided and abetted in the commission of, at least two predicate acts of racketeering activity
12  (i.e., violations of 18 U.S.C. §§1341 and 1343), within the past ten years. The multiple acts
13  of racketeering activity that the Defendants committed, or aided or abetted in the
14  commission of, were related to each other, posed a threat of continued racketeering activity,
15  and therefore constitute a "pattern of racketeering activity." The racketeering activity was
16  made possible by the Defendants' regular use of the facilities, services, distribution
17  channels, and employees of the Lease RICO Enterprise. The Defendants participated in the
18  scheme to defraud by using mail, telephone and the Internet to transmit mailings and wires
19  in interstate or foreign commerce and to engage with Plaintiff, others similarly situated.

20  66.    The Defendants used, directed the use of, and/or caused to be used, thousands
21  of interstate mail and wire communications in service of their scheme through virtually
22  uniform misrepresentations, concealments and material omissions.

23  67.    In devising and executing the illegal scheme, the Defendants devised and
24  knowingly carried out a material scheme and/or artifice to defraud Plaintiff, and others
25  similarly situated to obtain money from them by means of materially false or fraudulent
26  pretenses, representations, promises, or omissions of material facts. For the purpose of
27  executing the illegal scheme, the Defendants committed these racketeering acts, which
28

number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

68. The Defendants' predicate acts of racketeering (18 U.S.C. §1961(1)) include, but are not limited to:

    a. Mail Fraud: The Defendants violated 18 U.S.C. §1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to charge the early lease termination penalty, by means of false pretenses, misrepresentations, promises, and omissions.

        i. Through the use of television and internet advertisements Defendants induced Plaintiffs and others to visit their and affiliated dealerships;

        ii. Upon inducing the execution of the lease agreement, through use of mail and other means of communication, Defendants engaged with Plaintiffs and others to enforce the collection of monthly lease payments;

        iii. Through use of mail and other means of communication, Defendants engaged with Plaintiffs and others to enforce the collection of the early lease termination penalty.

    b. Wire Fraud: The Defendants violated 18 U.S.C. §1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

        i. Through the use of written invoices;

        ii. Through the use of pervasive use of the internet through interstate commerce;

        iii. Through the use of brochures describing their services;

        iv. All of the above acts were continued for in excess of two calendar years under both (a) and (b);

        v. All of the above activities were designed to conceal from the public the nature of their fraudulent scheme in order to repeatedly increase profits and sales;

69. The Defendants' use of the mails and wires, for the purpose of executing the illegal scheme, include, but are not limited to, the transmission, delivery, or shipment of the following by the Defendants or third parties that were foreseeably caused to be sent as a result of Defendants' illegal scheme:

    a. Lease documents;

PLAINTIFF'S COMPLAINT FOR DAMAGES

b.     Monthly billing statements;

c.     Demands for payments;

d.     Sales and marketing materials, including advertising, websites, product packaging, brochures, and labeling, which misrepresented and concealed the true nature of Defendants' services;

e.     Documents intended to facilitate the payment of the early lease termination penalty by Plaintiffs and others similarly situated;

f.     Documents to process and receive, including invoices and receipts;

g.     Tens, if not hundreds of thousands of dollars in compensation to the Defendant entities' directors, officers, and engineers, participating in the Lease RICO Enterprise, whose identities are to be ascertained;

h.     Deposits of proceeds; and

i.     Other documents and things, including electronic communications.

70.    The Defendants also used the Internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities. Specifically, Defendants made misrepresentations about their services on their websites, directories, third party websites, and through ads online and broadcasts on national television, all of which were intended to mislead regulators and the public and regulatory/licensing authorities about the nature of Defendants' operations.

71.    The Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, and other third-party entities in furtherance of the scheme.

72.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive regulators and consumers and lure consumers their scheme, which Defendants knew or recklessly disregarded as exposing consumers to increased danger of financial loss, stress and hardship.

73.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records. However, Plaintiff has described the types of, and in some

instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs, including, but not limited, invoices for the early lease termination penalty balance.

74.   The Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. §1962(d), the Defendants conspired to violate 18 U.S.C. §1962(c), as described herein. Various other persons, firms and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

75.   The Defendants aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. §§1341 and 1343 offenses.

76.   To achieve their common goals, the Defendants hid from the general public their true intent and obfuscated the true nature of their services after some consumers raised concerns. The Defendants suppressed and/or ignored warnings from the consumers, third parties, and regulatory authorities about the conflict between the basic terms of the leases as advertised and explained and the fraudulent interpretation of the early lease termination penalty as effectuated by the Lease RICO Enterprise.

77.   The Defendants and each member of the conspiracy, with knowledge and intent, have agreed to the overall objectives of the conspiracy and participated in the common course of conduct to commit acts of fraud and indecency in designing, implementing a scheme to market to consumers, induce leases without proper reference to the early lease termination penalty, induce early surrenders of leased vehicles without any reference to the sever financial repercussions arising out of the early lease termination penalty and subsequent enforcement of the same..

78.   Indeed, for the conspiracy to succeed, each of the Defendants and their co-conspirators had to agree to implement and use the similar devices and fraudulent tactics against their intended targets. Defendants were to refrain from explaining the early lease termination penalty to consumers at the time of entering into a lease contract and before turning in a vehicle early during the lease term.

79.   The Defendants knew and intended that Plaintiff and others similarly situated would rely on the material misrepresentations and omissions made by them about the lease terms. The Defendants knew and intended that consumers would enter the lease contracts and frequently surrender the leased vehicles prior to expiration of their lease term. As fully alleged herein, Plaintiff, along with hundreds or thousands of other consumers, relied upon Defendants' representations and omissions that were made or caused by them. Plaintiff's reliance was made obvious by the fact that they entered the lease and subsequently surrendered the subject vehicle prior to expiration of the full lease term. No individual would opt to become liable for twice the amount of their lease obligations if properly advised. Plaintiff would have obviously opted to park the subject vehicle and wait until the end of the lease term to turn it in had they been properly advised.

80.   As described herein, the Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiff and others similarly situated, based on their misrepresentations and omissions, while leasing vehicles worth significantly less than the amounts billed for. Plaintiff and others similarly situated could have leased vehicles worth twice the value of the subject vehicle had they known that the overall cost would have been double anyway. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

81.   The predicate acts all had the purpose of generating significant revenue and profits for the Defendants at the expense of Plaintiff and others similarly situated. The predicate acts were committed or caused to be committed by the Defendants through their

participation in the Lease RICO Enterprise and in furtherance of its fraudulent scheme and were interrelated in that they involved extorting funds in excess of the amounts outlined in Plaintiffs' and others' lease contracts.

82.     During the design, plotting and planning of their operations scheme, the Defendants shared technical, marketing, and financial information to insure that their operations flow would give the impression of compliance with federal and state regulations, inducing consumers to believe they were acting in good faith. Nevertheless, the Defendants shared and disseminated information that deliberately misrepresented to Plaintiff and others similarly situated. Plaintiff on good grounds believes that thousands of consumers have complained to date to Defendants for these vary same conduct that is the underlying reason for the present lawsuit. The Lease RICO Enterprise was deployed to defraud consumers across the United States.

83.     By reason of, and as a result of the conduct of the Defendants, and in particular, their pattern of racketeering activity, Plaintiff and others similarly situated have been injured in their business and/or property in multiple ways, including but not limited to:

  a.     Loss of vehicle use;

  b.     Loss of money;

  c.     Out of pocket payments excess early lease termination penalties;

  d.     Damage to their credit histories for non-payment of the early lease termination penalties;

  e.     Loss of the vehicle possession and ownership;

  f.     Other out-of-pocket and loss-of-use expenses; and

  g.     Payment for alternative transportation.

79.     The Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiff and others similarly situated, and Plaintiff is entitled to bring this action for three times the actual damages, as well as

injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

a.      For recovery of the greater of actual damages according to proof, if adequate, as appropriate;

b.      For recovery of all incidental damages, as appropriate;

c.      For recovery of all consequential damages, as appropriate;

d.      For recovery of punitive damages, as appropriate;

e.      Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, treble damages under Civil RICO;

f.      For statutory pre-judgment interest;

g.      For restitution, as appropriate;

h.      For injunctive relief, as appropriate;

i.      For recovery of interest at the legal rate, as appropriate;

j.      For recovery for all reasonable attorney's fees and the aggregate amount of costs reasonably incurred pursuant to California's Private Attorney General Statute, *California Code of Civil Procedure § 1021.5,* as appropriate; or

k.      Such other and further relief that the Court deems just and appropriate.

**PLAINTIFF HEREBY REQUESTS A JURY TRIAL**

Dated this 7th day of April 2019          THE MARGARIAN LAW FIRM

Hovanes Margarian, Esq.
Attorney for Plaintiff
ZACHERY QUINTANA